UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CELLCO PARTNERSHIP d/b/a** | : | Civil Action No.: 05-3158 (SRC) |
| **VERIZON WIRELESS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **CERTAIN UNDERWRITERS AT** | : | |
| **LLOYD'S LONDON, CERTAIN** | : | |
| **SUBSCRIBING LONDON MARKET** | : | **MEMORANDUM OPINION** |
| **INSURANCE COMPANIES and** | : | |
| **JOHN DOE INSURANCE** | : | |
| **COMPANIES 1-100,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**HUGHES, U.S.M.J.**

This matter comes before the Court upon Motion by Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Plaintiff") to compel production of documents, [Docket Entry #11], returnable April 17, 2006, and upon Motion by Defendants Certain Underwriters at Lloyd's London and Certain Subscribing London Market Insurance Companies ("Defendants"), [Docket Entry #12], also returnable April 17, 2006. The Court reviewed the written submissions of the parties, conducted oral argument on April 11, 2006 and reviewed the subject documents *in camera*. For the reasons set forth below, Plaintiff's Motion to Compel production of documents is denied and Defendants' Motion to Compel production of documents is granted in part and denied in part.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

In July 2003, Defendants issued an insurance policy to Plaintiff with an inception date of July 1, 2003, expiring July 1, 2004. Aon became Plaintiff's insurance broker soon thereafter. On April 13, 2004, Aon provided notice to Defendants that Plaintiff was making a claim based on one of its

former employee's misappropriation of and theft of its PIN numbers and calling cards, with a calculated loss by Plaintiff of $21,266,185. In July 2004, Defendants informed Plaintiff that it was declining coverage under Plaintiff's Commercial Crime Policy. In September 2004, Defendants reiterated their denial of Plaintiff's claim.

In response, Plaintiff filed a declaratory action and breach of contract action in New Jersey State Court, arguing that its claims were wrongfully denied. The action was removed to this Court on diversity grounds. Subsequently, on or about September 28, 2005, Defendants served discovery requests upon Plaintiff. Plaintiff provided responses to the document requests and also provided a privilege log. Pursuant to FED. R. CIV. P. 26(b)(5), Plaintiff withheld a number of documents prepared by, transmitted to, or that summarize communications with brokers at Aon, claiming the documents are protected by attorney-client and/or work-product privilege. After a number of conferences between the parties, fifteen (15) documents remain in dispute.

Plaintiff also served its discovery requests upon Defendants. In so doing, Plaintiff sought all documents related to the investigation and handling of [Plaintiff's] claim. In response, Defendants withheld a number of documents claiming attorney-client and work-product privileges. Plaintiff claims these documents were improperly withheld; arguing that Defendants obtained outside counsel, Wilson, Elser, Moskowitz, Edelman & Dicker LLP ("Wilson Elser") to investigate and handle Plaintiff's claim. Thus, anything related to this investigation, Plaintiff argues, was done as routine and ordinary business practices, and thus falls outside the purview of protected communications under the attorney-client or work-product privilege.

## II.     DISCUSSION

**A. Attorney-Client Privilege**

Communications between an attorney and client are protected by the attorney-client privilege. The purpose of this privilege is to promote frank discussions between a client and his/her attorney to allow the attorney to best represent the client. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L. Ed. 2d 39 (1976).

The privilege provides that:

> communications between lawyer and his client in the course of
> that relationship and in professional confidence, are privileged,
> and a client has privilege to (a) to refuse to disclose any such
> communication, and (b) prevent his lawyer from disclosing it,
> and (c) to prevent any other witness from disclosing such
> communication if it came to the knowledge of such witness
> (i) in the course of its transmittal between the client and the lawyer,
> or (ii) in a manner not reasonably to be anticipated, or
> (iii) as a result of a breach of the lawyer-client relationship, or
> (iv) in the course of a recognized confidential or privileged
> communications between the client and such witness. . . .

*N.J.R.E.* 504.

However, this privilege is not unconditional. It can be waived if the privileged information is communicated to outside parties. *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990). However, the presence of any third party does not automatically constitute a waiver of the privilege. For example, "communications between corporate counsel and company personnel are privileged so long as the information is relayed for the purpose of obtaining legal counsel." *Andritz Sprout-Bauer, Inc., v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-95, 101 S.Ct. 677, 685, 66 L.Ed.2d 584

(1981)). Similarly, "disclosure to agents retained by counsel to assist him or her in advising the client and handling legal matters does not operate as a waiver. The privilege attaches to agents and representatives of counsel whose services are necessary for effective representation of the client's interests." *Id.* at 632 (quoting *X Corp. v. Doe*, 805 F. Supp. 1298 (E.D. Va. 1992)).

As noted, the presence of an agent or interpreter does not automatically waive the attorney-client privilege. To protect the privilege, the party claiming a third party as an agent,

> bears the burden of showing that the person in question worked at the direction of the lawyer, and performed tasks relevant to the client's obtaining legal advice, while responsibility remained with the lawyer. Morever, when the third party is a professional, such as an accountant, capable of rendering advice independent of the lawyer's advice to the client, the claimant must show that the third party served some specialized purpose in facilitating the attorney-client communications and was essentially indispensable in that regard.

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence P 503(a)(3)[01] at 503-31 to 38 (1993). In considering the parameters of the agency exception to the wavier of attorney-client privilege, the Second Circuit Court of Appeals determined that conversations between counsel and a tax specialist, retained to help counsel understand the consequences of a pending client action, did not serve a specialized purpose in facilitating the attorney-client relationship. *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). While noting that *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) found the presence of an "interpreter" in an attorney-client meeting did not constitute waiver of the privilege, *id.* at 922, the Second Circuit distinguished the role of the tax specialist whom an attorney consulted for clarification on the tax consequences of its clients' actions. *Ackert*, 169 F.3d at 139. The Court found that while the attorney interviewed the

specialist to gain information to better advise his client, "the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client....[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *Id.* at 139.

Therefore, just because a communication between an attorney and a specialist prove helpful to the attorney's representation of his/her client does not mean that the communications are necessarily privileged. However, the "inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between the attorney and the client." *Id.* The Third Circuit Court of Appeals, in analyzing the clergy/communicant privilege found that "as is the case with the attorney-client privilege, the presence of third parties, if essential to and in furtherance of the communication, should not void the privilege." *In re Grand Jury Investigations*, 918 F.2d 374, 384 (3rd Cir. 1990). Further, the Court found that

> the constructional rule that evidentiary privileges should be narrowly construed, that recognition of the clergy-communicant privilege in this circumstance depends upon whether the third party's presence is essential to and in furtherance of a communication to a member of the clergy. As is the case with consultants between attorneys and clients, the presence of multiple parties, unrelated by blood or marriage, during discussions with a member of the clergy may, but will not necessarily, defeat the condition that communications be made with a reasonable expectation of confidentiality in order for the privilege to attach.

*Id.* at 386.

**1.     Plaintiff's Communications with Aon**

     *a.     Attorney-Client Relationship*

Plaintiff claims that Aon provided legal counsel to Plaintiff despite its designation as an insurance broker.  Plaintiff relies, in part, on the fact that John Morrissey, an employee of Aon who worked on Plaintiff's claim, is a licensed attorney and acted in that role while assisting Plaintiff with its claims.  However, given the factual circumstances surrounding the relationship between Aon and Plaintiff, the Court cannot find that either an explicit nor implicit attorney-client relationship existed between Plaintiff and Aon.

First, no retainer agreement existed.  While the lack of a retainer agreement is not dispositive, it is a factor to consider in determining whether an attorney-client relationship existed.  Second, the parties acknowledge that Aon was originally hired as an insurance broker.  While Plaintiff claims their role changed throughout the course of their relationship, Plaintiff has not demonstrated how or when that relationship changed.  Finally, while Mr. Morrissey is a licensed attorney, that does not automatically transform any professional relationship he has into an attorney-client relationship.  More specifically, in his correspondence with Plaintiff, Mr. Morrissey clearly states that the information he is providing is not intended to be legal advice.  This also demonstrates that neither Aon nor Plaintiff could have reasonably believed that an attorney-client relationship existed or that they had an expectation of confidentiality surrounding their communications.  Given the above, the Court cannot find that either an explicit or implicit attorney-client relationship existed, thus the attorney-client privilege does not apply.

     *b.     Aon's role as an Agent*

In the alternative, Plaintiff claims that Aon acted as an agent/interpreter for Plaintiff and

Plaintiff's Counsel and therefore, their communications with Plaintiff and Plaintiff's counsel remain confidential. However, Aon's role in providing information and advice to Plaintiff is more closely related that of the tax specialist in *Ackert*. *Ackert,* 169 F3d at 139. As mentioned the Court found that the specialist assisted the attorney in determining the best advice to provide his clients on tax-related issues. The Court also found that this did not rise to the level of agent/interpreter as it did not serve a specialized purpose in facilitating the attorney-client relationship, despite it having aided in the attorney's representation of his client. The same is true here. Aon did not act as an agent of the attorney or Plaintiff for purposes of providing or interpreting legal advice. While the information and advice provided may have proved helpful, it was not needed to interpret complex issues in order to provide competent legal advice or to facilitate the attorney-client relationship. Therefore, Aon's communication between it and Plaintiff or Plaintiff's counsel is not protected by the attorney-client privilege under this theory.

**2.      Defendants Communications with Wilson Elser**

Like Plaintiff, Defendants have withheld documents based on attorney-client privilege. Plaintiff's oppose such claim, arguing that Wilson Elser did not serve as counsel to Defendants, but, rather served as an independent investigator of Plaintiff's coverage claim. Plaintiff further claims that because such work is done in the ordinary course of the insurance business, it is not protected by the attorney-client privilege even though Wilson Elser provides legal counsel in other contexts. Plaintiff also claims that the lack of any documents which indicate an independent investigation of their claim by Defendants supports their argument that Wilson Elser must have performed this function.

However, after reviewing the documents submitted for *in camera* review, it is apparent to

the Court that Wilson Elser was retained as legal counsel and provided such counsel to the Defendants. The documents do not suggest that Wilson Elser performed any independent investigation of Plaintiff's claim, but rather provided legal advice regarding its claim, including strategy for addressing any potential challenges to Defendants' declination of such claim. Thus, the communications between Defendants and Wilson Elser fall within the purview of attorney-client privilege and need not be produced to Plaintiff.

### B. Work-Product Privilege

Both Plaintiff and Defendants claim that their documents are also protected by the work-product privilege. This doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-63 (3d Cir. 2003) (*discussing, Fed. R. Civ. P.* 26(b)(3))(citations omitted). As with the attorney-client privilege, the work-product privilege can be waived. *Maertin v. Armstrong World Indus.*, 172 F.R.D. 143, 148 (D.N.J. 1997)(citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)). Waiver will not apply if the documents were "prepared in anticipation of litigation." *See, United States v. Rockwell Int'l*, 89 F.2d 1255, 1266 (3d Cir. 1990).

To determine if documents meet this standard, the Court should look to "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993) (citing *Rockwell*, 897 F. 2d at 1266)(citation omitted). The mere possibility of future litigation is insufficient to meet this test. *Leonen v Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990). In addition, documents

prepared in the ordinary course of business will not be shielded by the work-product privilege. *Rockwell,* 897 F.2d at 1266.

      *1.*      *Plaintiff and Aon- Work Product*

In the present case, the Court finds that litigation was reasonably anticipated by the parties once Defendants denied Plaintiff's claim for coverage on July 8, 2004. While Plaintiff claims that they could have anticipated litigation prior to this date, based on Defendants prior history of denying similar claims, such conclusion is not reasonable given the factual circumstances of the case. Thus, any documents prepared prior to this date, cannot reasonably be understood to be "prepared in anticipation of litigation" and will not be protected by the work-product privilege.

Given that litigation could reasonably be anticipated after the declination of Plaintiff's claim on July 8, 2004, there are several documents which the Court finds need not be produced to Defendants. These documents discuss legal advice by plaintiff's in-house counsel, were prepared in anticipation of litigation and should be protected from disclosure, despite not being protected under the attorney-client privilege. After conducting an *in camera* review, the Court finds that Plaintiff must only produce the following documents, as they were either not prepared by or sent to legal counsel, were prepared prior to the date where litigation could reasonably be anticipated, or they do not involve legal advice or strategy in the pending suit: 1) VZW-INS 042087; 2) VZW-INS 042064; 3) VZW-INS 042145-042150 and 4) VZW-INS 042054-042055.   *2.*

      *Defendants and Wilson Elser - Work Product*

As mentioned above, Defendants' communications with Wilson Elser are protected by the attorney-client privilege. In addition, a number of documents are also protected under the

work-product privilege. For example, the communications between Wilson Elser and Defendants after the June 8, 2004 declination of coverage, when Defendants could have reasonably anticipated litigation, are protected by the work-product privilege. The documents do not concern the routine investigation of the claim, but rather the strategy for dealing with Plaintiff's anticipated challenge to the declination of coverage.

### III.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Compel discovery is denied. The Court finds that Wilson Elser was retained to provide legal counsel to Defendants regarding Plaintiff's allegations that its claim for coverage was improperly denied. The Court further finds that Plaintiff cannot establish that Aon served as legal counsel to Plaintiff, despite the fact that one of Aon's employees is a licensed attorney. Rather, the Court finds that Aon served as Plaintiff's Insurance Broker, but that such role did not elevate it to agent/interpreter for Plaintiff's attorney or Plaintiff, which would have protected communications between Aon and Plaintiff or Plaintiff's counsel from disclosure. However, the Court also finds that certain of Plaintiff's documents were prepared by Plaintiff's counsel in anticipation of litigation, contain legal advice, and as such are shielded from discovery by the work-product privilege. An appropriate Order accompanies this Memorandum Opinion.

**Dated: May 11, 2006**